IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BRANDON ADAMS, #227841, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO. 2:19-CV-15-MHT-CSC ) (WO) ) |
| SGT. CLEMONS, et al., | ) ) |
| Defendants. | ) |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I. INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by Brandon Adams, an indigent state inmate, challenging actions which occurred at Bullock Correctional Facility. Doc. 1 at 2. He names as Defendants the Alabama Department of Corrections, Sgt. Clemons, Officer Brooks[2], Officer Redd, and Officer Streeter, who were all employed at Bullock during the time relevant to the complaint. In the complaint, Adams alleges the Defendants are

---

[1] All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

[2] Based on the Plaintiff's failure to provide an accurate service address in this action and in *Adams v. Baskin,* 2:19 cv 0009-MHT-CSC (Filed Jan 4, 2019) (*See* Doc. 39 at 1 fn1), the Court concludes that Defendant Brooks is due to be dismissed from this case, without prejudice, pursuant to Fed. R. Civ. P. 4(m). Indeed, Plaintiff was previously warned that it was his responsibility "to monitor this case to make sure that the persons whom Plaintiff wishes to sue have been served." Doc. 4 at 4-5. However, Plaintiff has failed to provide an accurate service address for Defendant Brooks. The General Counsel for the Alabama Department of Corrections provided Defendant Brooks' last known address, *in camera. See Adams v. Baskin, id*, Doc. 21. Using the address provided, the Court directed Defendant Brooks in the instant action to "file a response in this case [] advis[ing] the court whether he will seek legal representation. . . ." Doc. 15. On March 14, 2019, this Order was returned to the Court with the following notation: "Return to Sender, Not Deliverable as Addressed, Unable to Forward." On March 18, 2019, the Court directed the United States Marshal to "make a 'reasonable effort' to locate [Defendant] Brooks . . ." Doc. 16. The U.S. Marshal attempted service three times, but he was unable to locate Defendant Brooks. *See Adams v. Baskin, id*, Doc. 26.

liable to him under the United States Constitution because Sgt. Clemons and Officer Redd subjected him to excessive force and Sgt. Clemons, Officer Brooks and Officer Streeter deliberately refused him medical attention. Doc. 1 at 3. Adams seeks monetary damages from the Defendants for the alleged violation of his constitutional rights. Doc. 1 at 4.

The defendants filed a special report (Doc. 17) and relevant evidentiary materials in support of their reports, including affidavits, prison documents and medical records, addressing Adams' claims. Docs. 17-1 thru 4. In these documents, the Defendants deny they that they subjected Adams to excessive force and deny that they acted with deliberate indifference toward him. Specifically, they deny that the physical encounter, which the Plaintiff alleges as the basis for his claims, ever occurred. *Id.*

After reviewing the special report filed by the Defendants, the court issued an order on April 15, 2019 directing Adams to file a response to the Defendants report, supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 18 at 2. The order specifically cautioned that "**unless within ten (10) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special report [and supplement thereto] and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law. *Id.* Adams filed a sworn response to this order on May 6, 2019. Doc. 21. Pursuant to the directives of the April 15, 2019, the court now treats the Defendants' special report as a motion for summary judgment.

## II.  SUMMARY JUDGMENT STANDARD

To survive the properly supported motion for summary judgment submitted by ADOC Defendants, Plaintiff must produce some evidence supporting his constitutional claims.  *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986).  He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus. Inc.*, 814 F.2d 607 (11th Cir. 1987).  Where all the evidentiary materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, the entry of summary judgment is proper.  *Celotex*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving party and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact.  *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  "The leniency the Court must apply does not mean the normal summary judgment standard is discarded; nor can the Court accept factual averments completely unsupported by the record."  *Jones v. Wal-Mart Assocs., Inc.*, No. 1:19-CV-03705-SDG, 2021 WL 243285, at *2 (N.D. Ga. Jan. 25, 2021) (citing *Nawab v. Unifund CCR Partners*, 553 F. App'x 856, 860 (11th Cir. 2013) ("Although a *pro se* complaint is entitled to a less strict interpretation, a *pro se* plaintiff is not excused from meeting the essential burden of establishing that there is a genuine issue as to a fact material to

3

his case. When a nonmoving party's response consists of nothing more than conclusory allegations, summary judgment is not only proper but required.") (citation and punctuation omitted in original); *Nalls v. Coleman Low Fed. Inst.*, 307 F. App'x 296, 298 (11th Cir. 2009) ("[A] *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment."))

Here, after a thorough and exhaustive review of all the evidence which would be admissible at trial, the court finds that Adams has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the individual Defendants with respect to his request for monetary damages against them in their official capacities. The court also finds that Adams has failed to demonstrate a genuine dispute of material fact on his claim for deliberate indifference. However, the court finds that Adams has demonstrated a genuine dispute of material fact as to his allegation of excessive force brought against the individual Defendants in their individual capacities.

### III. FACTS

The Plaintiff admits that he flooded his own cell in retaliation for officers' failure to allow him to use the phone. Doc. 1 at 3. He claims that on November 8, 2018, after he flooded his cell, Defendant officers Clemons and Redd came into his cell and ordered him to sit on the bed. He complied. *Id.* Then Officer Redd "struck me in the face and Sgt Clemons rammed me in my ribs and shoulder, officer Redd Struck me several more times in the face (left side). Then Sgt Clemons, put his baton up and struck me several times in the face also (Left side)." *Id.* Plaintiff also claims that Defendants Clemons, Redd and Streeter refused to take him for a body chart or to get him medical attention following the assault. *Id.* He states, "I was left in my cell until the swelling of

4

my face went down." Doc. 21-2 at 2.³ On November 10, 2018, Adams completed a sick call request where he claims "I need to be seen my face and jaw is hurting bad. I was assaulted by Sgt. Clemson {sic} and Officer Redd 11/8/18 and was not taking {sic} to get a body chart." 17-4 at 6. On November 15, 2018, the Plaintiff reported to ADOC mental health services that he was physically assaulted by officers on 11/8/18 and admitted that the assault occurred after he flooded his cell in retaliation for officers' failure to get him clothes and let him use the phone. Doc. 17-4 at 9. He also reported that no body chart was completed on him and he had been left in his cell following the assault. *Id.* Further, he stated that "his face was swollen on the left side." But the clinician noted "[n]o evidence currently of any injury." *Id.*

The Defendant officers adamantly deny these allegations. Defendant Clemons testified by affidavit as follows:

> I never struck him as he has stated. Officer Redd informed me that inmate Adams had flooded his cell. When I arrived to the unit, the area in front of his cell and cell floor was covered with water. When I looked into the cell, there were uniform jumpers in the toilet preventing the water to drain. I questioned inmate Adams about his actions and he stated he was tired of being in the cell and wanted to be transferred. I explained to him that his current actions were not going to get him transferred anytime soon. I then ordered him to mop the water up in his cell. He was handed a mop through his tray door. At no time did I, or any officer enter the cell and assault inmate Adams.

Doc. 17-1 at 1-2. Defendant Redd testified by affidavit as follows:

> Inmate Adams did intentionally flood his cell. I notified Sergeant Clemons about the incident. Sergeant Clemons came and talked to inmate Adams about his actions and ordered him to clean up the cell. Inmate Adams was not handcuffed because he was mopping up the water in his cell. Neither I nor another officer struck inmate Adams.

Doc. 17-2 at 1. Defendant Streeter testified by affidavit as follows:

> I did not deny inmate Brandon Adams medical attention.

---

³ The Court notes that although the Plaintiff names Officer Brooks as a Defendant in the caption of the complaint, he makes no specific allegations against him in the facts section of the complaint. Doc. 1 at 3.

5

Doc. 17-3 at 1.  The Plaintiff's body charts and transfer documents dated November 28, 2018, and November 26, 2018, show no injuries noted or reported.  Doc. 17-4 at 1-5.

To paint a complete picture of the events surrounding November 8, 2018, the Court will take judicial notice of the documents filed in *Adams v. Baskin,* 2:19-cv-0009-MHT-CSC (Filed Jan 4, 2019) which demonstrate Plaintiff alleged over two months prior to the incident forming the basis of the instant action, that he was assaulted by ADOC defendants after he stabbed a fellow inmate.  Specifically, he claims that on September 3, 2018, he was assaulted while he was handcuffed on the floor and also while he waited in the lobby to see medical. *See Adams v. Baskin, id*, Docs. 1, 32.  Plaintiff's affidavit filed in *Adams v. Baskin* acknowledges that his injuries were not documented on his body chart on September 3, but that he nonetheless needed to return to medical the next day due to his injuries.  *Id.* at Doc. 32.  Plaintiff's September 4, 2018, body chart, stated there was "swelling noted to 'L' side of jaw" and in the area provided for Plaintiff's statement, Plaintiff asserted: "I want to report what happen [sic] to me."  *Id.* at Doc. 31-3.  A few days later, Plaintiff had an x-ray taken of his mandible and face.  *Id.* at Doc. 31-5.  The reason for the exam was stated as "Altercation Left Side Pain" and in the space provided for findings was the following statement: "Multiple views of the facial bones demonstrates no evidence of acute bony or soft tissue injury. The orbital rims, nasal bones, and paranasal walls are intact. The paranasal sinuses are clear. There is no…foreign body or localized soft tissue swelling. . . ."  *Id.* at Doc. 31-6.  The x-ray report further added that Plaintiff had no identifiable fractures.  *Id*.

On September 10, 2018, Plaintiff submitted a sick call request, asserting his "left eye been draining and closing up and hurting every [sic] since last week I need to see somebody about this."  *See Adams v. Baskin, id,*. at Doc. 31-7.  During his medical appointment, Plaintiff stated he was hit in the eye and that his symptoms have persisted for one week.  *Id.* at Doc. 31-8.  In the area asking the

6

medical worker to describe if any external trauma was apparent was the following statement: "None; slightly swollen near inner corner." *Id*. The report further asserts, while redness was noted and Plaintiff stated that his eye was excessively watering, there was no sensitivity to light and Plaintiff reported no throbbing. *Id*. Next, on September 21, 2018, a medical report was submitted, asserting Plaintiff suffered from dizziness, a nosebleed, and blurred vision. *Id*. at Doc. 31-9. In the section asking whether Plaintiff suffered from any injury, Plaintiff stated that he was kicked in the head 3 weeks prior. *Id*.

## IV.  DISCUSSION

### A. Sovereign Immunity

Plaintiff names as a defendant the Alabama Department of Corrections, which as a state agency, is afforded sovereign immunity. The law is settled that the State of Alabama is absolutely immune from suit. *Papasan v. Allain*, 478 U.S. 265 (1986) (unless the State of Alabama consents to suit or Congress rescinds its immunity, a plaintiff cannot proceed against the State as the action is proscribed by the Eleventh Amendment and "[t]his bar exists whether the relief sought is legal or equitable.").

> "[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]." *Alabama v. Pugh*, 438 U.S. 781, 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 131 S.Ct. 1632, 1637–38, 179 L.Ed.2d 675 (2011). "A State's consent to suit must be 'unequivocally expressed' in the text of [a] relevant statute." *Sossamon v. Texas*, 563 U.S. 277, 131 S.Ct. 1651, 1658, 179 L.Ed.2d 700 (2011) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). "Waiver may not be implied." *Id*. Likewise, "Congress' intent to abrogate the States' immunity from suit must be obvious from 'a clear legislative statement.'" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55,

116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (quoting *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 786, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991)).

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015). Thus, the State of Alabama may not be sued unless the State has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. art. I, § 14. The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit. *Pugh,* 438 U.S. at 782, 98 S.Ct. 3057 (citing Ala. Const. art. I, § 14.)

*Selensky*, 619 F. App'x at 849. "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990)). Consequently, any claims lodged against the Alabama Department of Corrections are due to be dismissed with prejudice.

To the extent Adams sues the individual Defendants in their official capacities, they are also immune from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated

8

Alabama's Immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, the Defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Depart. of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989). Summary judgment is therefore due to be granted in favor of Defendants Clemons, Redd and Streeter on the claims for monetary damages lodged against them in their official capacities.

**B. Qualified Immunity**

The Defendants raise the defense of qualified immunity to the claims lodged against them in their individual capacities. "The defense of qualified immunity completely protects government officials performing discretionary functions from suit [for damages] in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir.2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Indeed, the Supreme Court has stated that the particular question for the court is "whether the state of the law in [2018] gave respondents fair warning that their alleged treatment of [Adams] was unconstitutional." *Id*. at 741.

"The purpose of the qualified immunity defense is to protect[] government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010) (internal quotations and citations omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and

protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citations and quotation marks omitted). The Eleventh Circuit has determined that the law is "clearly established" for purposes of qualified immunity "only by decisions of the U. S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins v. Talladega City Bd. of Education*, 115 F.3d 821, 826-827 n.4 (11th Cir. 1997). The Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). Even so, qualified immunity is only an affirmative defense to an action for damages; it does not bar actions for declaratory or injunctive relief. *See Wood v. Strickland*, 420 U.S. 308, 315, n.6 (1975) ("Immunity from damages does not ordinarily bar equitable relief as well."), *overruled in part on other grounds by Harlow*, 457 U.S. 800; *American Fire, Theft & Collision Managers, Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991) (holding that the defense of qualified immunity is limited to actions for monetary damages and does not serve as a defense to actions seeking equitable relief). Accordingly, taking the Plaintiff's allegations as true for purposes of summary judgment, the Court will consider whether the ADOC Defendants used excessive force against him in violation of his Eighth Amendment rights when after he flooded his cell they beat him while he was fully complying with Defendants' instructions to sit on his bed in his cell.

    **(i) Excessive Force**

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The

10

subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id.* (internal quotations omitted).

On November 8, 2018, following the Plaintiff's intentional flooding of his cell, he alleges that Defendants hit him on the left side of his face multiple times and in the shoulder and ribs while he was following orders to sit on his bed in his cell. He also alleges that he was not taken for medical treatment despite his requests to Defendants for a body chart. Doc. 1 at 3. The first medical record completed on November 15, 2018 by Department of Corrections Mental Health Personnel recorded Plaintiff's allegations of the November 8, 2018 assault, but stated, "[n]o evidence currently of any injury." Doc. 17-4 at 9. The Defendants deny that they subjected Adams to excessive force and deny that they acted with deliberate indifference toward him. Specifically, they deny that the physical encounter, which the Plaintiff alleges as the basis for his claims, ever occurred. *Id.*

Regarding the objective component, a plaintiff must show "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. (internal quotations omitted). In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). The Court, however, further directed that "the relatively modest nature of [an inmate's] alleged injuries will no doubt limit the damages he may recover." *Id*. at 40.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117

11

>L.Ed.2d 156 (1992).  To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996).  From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-1301.  "When prison officials maliciously and sadistically use force to cause harm, . . . contemporary standards of decency always are violated . . . whether or not significant injury is evident.  Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Wilkins*, 559 U.S. at 38 (internal quotations and citation omitted).  Thus, in an excessive force case such as the one at hand, "the core judicial inquiry is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Bowden*, 576 Fed. App'x at 953 (internal quotations and citation omitted).

Plaintiff's evidence reflects that on November 8, 2018, after he flooded his cell, Defendant Officers Clemons and Redd repeatedly hit him on the left side of his face and in his ribs and shoulder while he was following orders to sit on his bed.  He also alleges that he was not taken for medical treatment in spite of his repeated requests for a body chart.  Doc. 1 at 3.  While multiple medical records demonstrate Plaintiff's complaints of pain to his face and eye prior to November 8, 2018[4], Plaintiff's

---

[4] The results of these medical appointments indicate, while Plaintiff suffered no fracture or evidence of acute bony or soft tissue injury to his face, there was observed redness in his eye and slight indentation to the left side of Plaintiff's face.  *See Adams v. Baskin,* 2:19-cv-0009-MHT-CSC at Docs. 1, 31-2, 31-4, 31-5, 31-6, 31-7, 31-8, 31-9, 31-12, 31-13, 32.

12

first medical records dated a full week after November 8, 2018 report Plaintiff's allegations of assault but "[n]o evidence currently of any injury."  Doc. 17-4 at 9.  However, in a sick call request dated November 10, 2018, the Plaintiff claims that "I need to be seen.  My face and jaw is hurting me bad.  I was assaulted by Sgt. Clemson {sic} and Offcer Redd 11/8/18 and was not taking {sic} to get a body chart."  Doc. 17-4 at 6.  Even though ADOC Defendants dispute the version of events presented by Plaintiff, the Court is required at this stage of the proceedings to view the facts in the light most favorable to Plaintiff and draw all reasonable inferences from those facts in his favor.  *Bradley v. Franklin Correctional Service, Inc.*, 739 F.3d 606, 608 (11th Cir. 2014); *Anderson v. Liberty Lobby*, 477 U.S. at 255 (all justifiable inferences are to drawn in favor of the party opposing summary judgment).

The court concludes that Plaintiff's version of the events could support an excessive force claim.  *Bowden*, 576 Fed. App'x at 954.  Indeed, considering the factors as stated in *Whitley*, *supra,* including "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response," 475 U.S. at 321,  the Court concludes there is a question of fact whether the Defendants acted "maliciously and sadistically to cause harm," *Bowden*, 576 Fed. App'x at 953, when they repeatedly hit the Plaintiff in his face and body following his intentional flooding of his cell while he, the only inmate in his cell, was complying with orders to sit on his bed.  Thus, the court concludes that the facts stated by the Plaintiff do not demonstrate a "need" for any force because the Plaintiff presented no "threat," *Whitley*, 475 U.S. at 321.  Further, the court concludes that taking the evidence in the light most favorable to the Plaintiff, the Defendant officers' alleged assault on the Plaintiff following his intentional flooding of his cell does not demonstrate "a good-faith effort to maintain or restore discipline" but rather occurred in an effort by Defendant officers to "maliciously

and sadistically . . . cause harm" to the Plaintiff due to his bad acts. *Bowden*, 576 Fed. App'x at 953. Finally, the court concludes that the Defendant officers' refusal to take the Plaintiff for medical attention demonstrates no "efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321.

Having concluded that the Defendants have failed to meet the "discretionary authority" standard, the court could conclude that qualified immunity does not apply on this basis alone. However, for the sake of completeness, the court will consider whether Adams has demonstrated both that "(1) the defendants violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004); *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004) (same); *Youmans*, 626 F.3d at 562 (citation omitted) ("[O]nce a defendant raises the defense [of qualified immunity and demonstrates he was acting within his discretionary authority], the plaintiff bears the burden of establishing both that the defendant committed a constitutional violation and that the law governing the circumstances was clearly established at the time of the violation."). This court is "free to consider these elements in either sequence and to decide the case on the basis of either element that is not demonstrated." *Id.*; *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241–42) (holding that the court may analyze the elements "in whatever order is deemed most appropriate for the case.") (quoting *Hope,* 536 U.S. at 739). Thus, as directed by the Supreme Court in *Hope,* the court will examine the question of "whether the state of the law in [2018] gave respondents fair warning that their alleged treatment of [Adams] was unconstitutional." 536 U.S. at 741.

The court answers these questions in the affirmative on the basis of *Whitley*, 475 U.S. at 321, and *Wilkins,* 559 U.S. at 38.  Indeed, "an inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins, id.*   Accordingly, the court concludes that qualified immunity does not protect the Defendants Clemons and Redd from liability for their actions on the excessive force claim.  Having so concluded, the court will now turn its attention to the question of whether Adams can survive summary judgment on his claim that Defendants Clemons, Redd, and Streeter acted with deliberate indifference toward him by failing to get him medical attention following the alleged assault.

## ii.  Deliberate Indifference

It is undisputed that despite Plaintiff's requests to Defendants for medical attention, Docs. 1 at 3 and 17-4 at 6, the Plaintiff did not receive medical attention of any sort for at least a week following the alleged assault on November 8, 2018.  Doc. 17-4 at 9.  The Defendants, however, testify that the assault never occurred and also testify that they did not deny Plaintiff any medical treatment. Assuming as the court must on a motion for summary judgment that the Plaintiff received injuries to the left side of his face due to the assault as he claims[5], the Court concludes that Plaintiff fails to demonstrate a disputed issue of fact to survive summary judgment on his deliberate indifference claims.

"The Eleventh Circuit has consistently held that "to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the [mere] tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380

---

[5] The Court notes that although the Plaintiff alleges he was "rammed" in his "ribs and shoulder", Doc. 1 at 3, he does not allege he suffered any injury or pain from this contact.

15

(11th Cir. 1982) (quoting *Wright v. El Paso County Jail*, 642 F.2d 134, 136 (5th Cir. 1981); *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986). Indeed, the law requires establishment of both objective and subjective elements to demonstrate an Eighth Amendment violation. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d at 1028–29.

As to the subjective element, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837–38; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834–38, 114 S.Ct. at 1977–80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324–25, 115 L.Ed.2d 271 (1991). . . .

> Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . .  Each individual Defendant must be judged separately and on the basis of what that person knew at the time of the incident." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

Consequently, to survive the properly supported motion for summary judgment filed by the Defendants, Adams must first demonstrate an objectively substantial risk of serious harm existed to him due to injuries he received following the alleged assault and "that the defendant[s] disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014), *citing Caldwell*, 748 F.3d at 1100.  If he establishes these objective elements, Adams must then satisfy the subjective component.  To do so, Adams "must [show] that the defendant[s] subjectively knew that [Adams] faced a substantial risk of serious harm from [their failure to get him medical treatment].  The defendant[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).  In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "***particular threat or fear felt by [the] [p]laintiff***." *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (emphasis added).  Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn

17

      that a substantial risk of serious harm exists — and the prison official must also draw that inference." *Id*. at 1349 (quotations omitted).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (emphasis in original).

      The Court concludes that the factual allegations in Adams' complaint, which are adamantly denied by Defendants, fail to demonstrate that an objectively substantial risk of serious harm existed to Adams following the alleged assault and that Defendants Clemons, Redd and Streeter "disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson,* 568 F. App'x at 721. First, there is no evidence in the record that Plaintiff suffered "serious" harm as a result of the alleged assault. Indeed, a week after the alleged assault, Alabama Department of Corrections Mental Health Services personnel noted "[n]o evidence currently of any injury" to Plaintiff. Doc. 17-4 at 9. Even though Plaintiff complains in a sick call request dated November 10, 2018 that "my face and jaw is hurting me bad" due to the alleged assault, Doc. 17-4 at 6, there is no evidence of "serious harm" to him about which the Defendants were aware. Indeed, he fails to allege significant injury or pain in his complaint resulting from the assault. Doc. 1 at 3. Rather, Plaintiff complains that Defendants refused "to take me to medical for a body chart." *Id.* Thus, even assuming Plaintiff suffered injury and pain to the left side of his face at the hands of Defendant guards, there is no evidence in the record that the alleged injuries created a "substantial risk of serious harm" to Plaintiff or that the Defendants were aware of and disregarded that risk. Thus, the court concludes plaintiff's allegations fail to satisfy the objective component of his deliberate indifference claims. Accordingly, the court concludes summary judgment is due to be granted as to plaintiff's deliberate indifference claims.

## V. CONCLUSION

      Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendant Brooks be dismissed from this case, without prejudice, pursuant to Fed. R. Civ. P. 4(m).

2. The Alabama Department of Corrections be dismissed from this case with prejudice because it is entitled to absolute immunity.

3. The Defendants' motion for summary judgment as to the Plaintiff's claims seeking monetary damages from them in their official capacities on the excessive force and deliberate indifference claims be GRANTED and this claim be DISMISSED with prejudice because the Defendants are entitled to absolute immunity from such damages.

4. The Defendants' motion for summary judgment on behalf of the Defendant Correctional Officers Sgt. Clemons and Officer Redd as to the Plaintiff's excessive force claims lodged against them in their individual capacities be DENIED.

5. The Defendants' motion for summary judgment on behalf of the Defendant Correctional Officers Sgt. Clemons, Officer Redd and Officer Streeter as to Plaintiff's deliberate indifference claims lodged against them in their individual capacities be GRANTED.

6. Defendant Officer Streeter be DISMISSED as a party to this action.

7. This case be referred back to the undersigned for an evidentiary hearing on the Plaintiff's surviving excessive force presented against defendants for monetary damages in their individual capacities.

On or before **December 29, 2021**, the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made. Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the proposed factual findings and legal conclusions set forth in the Recommendations of the Magistrate Judge shall bar a party from a *de novo* determination by the District Court of these factual findings and legal conclusions and shall "waive the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice.  11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) ("When the magistrate provides such notice and a party still fails to object to the findings of fact [and law] and those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 15th day of December, 2021.

    /s/    Charles S Coody
UNITED STATES MAGISTRATE JUDGE